## AMERICAN SOCIALIST SOC. v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 186.

1. **Army and navy ☞40—"Whoever," as used in Espionage Act, § 3, includes corporations.**

   In Espionage Act June 15, 1917, tit. 1, § 3,[1] providing that "whoever, when the United States is at war, shall willfully make or convey false reports or false statements, * * * or shall willfully obstruct the recruiting or enlistment service," etc., shall be guilty of an offense, the word "whoever" is to be construed as including corporations and partnerships.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Whoever.]

2. **Army and navy ☞40—In prosecution for willfully obstructing recruiting, evidence to show intent admissible.**

   In a prosecution under Espionage Act for willfully obstructing the recruiting and enlistment service by the publication and circulation of pamphlets containing matter calculated to discourage military service in the war, evidence of the publication and distribution by defendant of other similar matter *held* admissible on the question of intent.

3. **Army and navy ☞40—Publication and circulation of pamphlet held to warrant conviction for willfully obstructing recruiting service.**

   That the author of a pamphlet was acquitted of the charge of thereby obstructing the recruiting and enlistment service in time of war, on the ground that it was not written with such intent, *held* not inconsistent with the conviction of his codefendant, which published and circulated the pamphlet.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against the American Socialist Society. Judgment of conviction (260 Fed. 885), and defendant brings error. Affirmed.

S. John Block, I. M. Sackin, and Walter Nelles, all of New York City (Samuel Seabury, of New York City, of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Earl B. Barnes and Theodor Megaarden, both of New York City, of counsel), for the United States.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment of conviction of the American Socialist Society for violation of section 3, title 1, of the Espionage Act. It was indicted jointly with Scott Nearing, the author of a pamphlet entitled "The Great Madness," which was published and distributed by the society. The jury acquitted Nearing, but found the society guilty on the third and fourth counts of the indictment. The third count charged the defendants with unlawfully, willfully, knowingly, and feloniously attempting to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States. The fourth count charged them with unlawfully, willfully, knowingly, and feloniously obstructing the

[1] Certiorari denied 254 U. S. —, 41 Sup. Ct. 12, 65 L. Ed. —.

[1] Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c.

recruiting and enlistment service of the United States.    Judge Mayer set aside the verdict on the third count, and sentenced the society on the fourth count to pay a fine of $3,000.

The section in question reads:

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10.000 or imprisonment for not more than twenty years, or both."    40 Stat. 219, c. 30, tit. 1, § 3.

Counsel for defendant does not dispute the finding of the jury that "The Great Madness," which was written, printed, and distributed after the passage of the Espionage Act of June 15, 1917, was of a nature, or at least might fairly have been found by the jury to have been of a nature, calculated to obstruct the recruiting and enlistment service of the United States.

[1] The first objection is that the use of the word "whoever" in the section demonstrates the intention of Congress to exclude corporations.    No doubt an apter word might have been employed, or it might have been defined in the act as including corporations.    But without this we cannot conceive that Congress intended to except corporations and partnerships from the prohibition, or that it can have intended to permit corporations and partnerships to commit with impunity the other even more serious offenses enumerated in the act, viz. to willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies, or to willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States.    Common sense requires the act to be construed, even at the expense of its letter, so as to cover the mischief intended to be prevented.    The Supreme Court did this in the case of Church of the Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.    See, also, United States v. Union Supply Co., 215 U. S. 50, 30 Sup. Ct. 15, 54 L. Ed. 87, and Commonwealth v. Graustein Co., 209 Mass. 38, 95 N. E. 97.

It is next objected that the testimony shows that the society did not publish and distribute the pamphlet with any intention to obstruct the recruiting or enlistment service of the United States.    It was proved that the defendant Nearing sent the manuscript to the Rand School, operated by the society, in August, 1917.    Karpf, the manager of the Rand Book Store, read it and gave it to Cohen, a director of the society and chairman of the publication committee, who read it.    Mrs. Mailly, the executive secretary of the Rand School, also looked it over hastily.    The society paid Nearing for the pamphlet and published 10,000 copies in September and a second edition of 10,000 copies in October, 1917.    February 8, 1918, at the annual meeting of the society,

the publication committee reported that two pamphlets by Scott Nearing had been published. In this situation the jury could properly find that the pamphlet was printed and distributed by authority of the society.

The judge charged the jury that they must acquit the society, unless they found that the employés or committee of the society, who acted personally in relation to the pamphlet, were authorized by the board of directors or the membership of the corporation to obstruct the recruiting or enlistment service. This was a question of fact supported by some evidence, and the finding of the jury in favor of the government is binding upon us.

[2] The society next objects that the court erred in admitting other of its prior publications. They were competent on the question of the specific intent with which the pamphlet in question was published. If the statute had made it a crime simply to commit acts tending to obstruct the recruiting and enlistment service of the United States, there would be no propriety in showing that the society, defendant, had published similar pamphlets on prior occasions. But the statute requires the government to prove in addition the specific deliberate intent to obstruct. It would certainly throw light upon defendant's mental attitude to show that on previous occasions it had published pamphlets recommending such obstruction. Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. 566. Such publications would tend to rebut the possibility that the publication complained of was accidental or against orders. Marshall v. United States, 197 Fed. 515, 117 C. C. A. 65.

[3] The last objection is that the judgment should be reversed, because, if the author of the pamphlet was not guilty, the publishers could not be guilty. It is said that Nearing must have been acquitted on one of two grounds, viz. either that the pamphlet itself was innocuous or that he had no intent to obstruct the recruiting and enlistment service of the United States. If the acquittal of Nearing was on the first ground, the society ought also to have been acquitted. We are therefore justified in finding that the acquittal was on the second ground. The statute, in defining the offense, imposes the additional condition that the act shall be done with the specific intent of obstructing the recruiting and enlistment service of the United States. The jury might believe that Nearing did not write these harmful views with the intent of obstructing the recruiting and enlistment service of the United States, and at the same time believe that the Society did print and distribute them with that intent. Such findings would not be inconsistent. This is a matter of fact, of which the jury are the sole judges, and with it we have no concern.

The judgment is affirmed.