#24670-rev & rem-RWS

**2008 SD 130**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SECRETARY OF STATE,
CHRIS NELSON,                                    Plaintiff and Appellant,

v.

PROMISING FUTURE, INC.,
and ROGER W. HUNT,                              Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

JEFFREY P. HALLEM
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellant.

STEVEN W. SANFORD
SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota               Attorneys for defendants
                                        and appellees.

\* \* \* \*

ARGUED SEPTEMBER 29, 2008

OPINION FILED **12/30/08**

#24670

SABERS, Justice.

[¶1.] After Promising Future, Inc. (PFI) refused to indentify the unnamed third party who gave it $750,000, which in turn was given to South Dakotans for 1215/VoteYesforLife.com (VoteYesforLife), Secretary of State Chris Nelson (Secretary) filed a declaratory judgment action mandating the disclosure of the unnamed third party's identity as required by SDCL 12-25-19.1 and 12-25-13.1. On summary judgment, the circuit court found that Defendants' conduct did not meet the definition of a ballot question committee, and therefore dismissed the case. We reverse and remand.

## FACTS

[¶2.] PFI is a for-profit South Dakota corporation formed September 14, 2006,[1] by an unnamed third party and Roger W. Hunt (Hunt).[2] The unnamed third

---

1. PFI's Articles of Incorporation set forth its stated purpose as follows:
   The purpose for which the corporation is organized is to invest in real estate and other commercial venture; for the advancement and support of public and special activities, causes, events, issues, and entities furthering the general welfare and interests of the people of South Dakota; for education of the public concerning ballot issues; and to engage in and support public and private endeavors, interests, activities, causes, events, programs, and entities in and related to maintaining and preserving traditional family values; and in general to carry on any other lawful business whatsoever in connection with the foregoing or which is calculated directly or indirectly, to promote the interests of the corporation or to enhance the value of its properties. Nothing herein contained shall be deemed to limit or deprive the corporation of the powers and rights granted to it by the South Dakota Business Corporation Act.

2. Hunt serves as PFI's registered agent, director, president, vice president, treasurer, and secretary. He is not a shareholder or equity holder.

(continued . . .)

-1-

party, who is PFI's sole shareholder, provided PFI with $750,000. Thereafter, PFI made three $250,000 contributions to VoteYesforLife.[3]

[¶3.] On November 3, 2006, the Secretary informed Defendants that SDCL 12-25-19.1 and 12-25-13.1 required them to file campaign finance reports setting forth the name, address, and place of employment of any individual who provided funds to PFI. Defendants filed pre-election and supplemental campaign finance reports under protest which identified the $750,000 PFI gave to VoteYesforLife. However, Defendants refused to disclose the identity of the source of money given to PFI. The Secretary filed a declaratory judgment action, asking the court to declare that Defendants formed a ballot question committee, and therefore mandate the disclosure of the unnamed third party's identity.

[¶4.] Defendants filed a motion to dismiss, which was denied. Upon filing their answer, Defendants filed a motion for judgment on the pleadings or alternatively, for summary judgment. The circuit court granted summary judgment to Defendants after finding that "the actions of the Defendants and the unnamed third party failed to create a ballot question committee under then SDCL 12-25-1(1A)." The Secretary appealed, raising the following issue:

> Whether Hunt, the unnamed third party, and PFI formed a ballot question committee under South Dakota law.

---

(. . . continued)
    Hunt, the unnamed third party, and PFI will be referred to as Defendants, unless further distinction is necessary.

3.    VoteYesforLife is a ballot question committee organized to support the adoption of HB 1215, which was referred and voted upon at the November 7, 2006, general election.

## STANDARD OF REVIEW

[¶5.] In *Rotenberger v. Burghduff*, we set forth the standard of review for statutory interpretation and application:

> Statutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review. Statutes are to be construed to give effect to each statute and so as to have them exist in harmony. It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascertained from the language expressed in the statute. . . . "We give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject."

2007 SD 7, ¶8, 727 NW2d 291, 294 (additional and internal citations omitted).

[¶6.] **Whether Hunt, the unnamed third party, and PFI formed a ballot question committee under South Dakota law.**

[¶7.] The Secretary claims the circuit court erred in characterizing the funds PFI gave to VoteYesforLife as "contributions," and thereby concluding that a ballot question committee was not formed. The Secretary argues that Defendants formed a ballot question committee, and subsequently violated SDCL 12-25-19.1 and 12-25-13.1 (contributor identification statutes), by refusing to identify the unnamed third party. Defendants contend summary judgment was appropriate in light of the Secretary's improper interpretation of the disclosure statutes. Furthermore, they claim the circuit court's rationale: because the word "contribution" is not included in the statutory language, Defendants' contributions to PFI did not form a ballot question committee, and therefore, the unnamed third party's identity need not be disclosed. We disagree.

[¶8.] Defendants' principal argument is that the complaint cannot state a cause of action because the Secretary's interpretation of the statutes requires

disclosure upon *the Secretary's* determination of Defendants' subjective intent to make a contribution to a ballot question committee.  Defendants contend that the statutes cannot be construed to create a ballot question committee every time, in the judgment of the Secretary, any two or more individuals collaborate with intent to contribute to such a committee.  Defendants point out that such a construction would absurdly make everyone (such as husbands and wives or friends) a ballot question committee subject to disclosure merely because they discuss a ballot measure and agree to contribute to a ballot question committee.

[¶9.]        Defendants' argument is misplaced for two reasons.  First, Defendants mischaracterize the question presented under the facts alleged.  In this case, we have not been asked to determine whether all acts of collaboration with intent to contribute trigger the formation of a ballot question committee when a contribution is made.  This case presents a narrower question:  whether two or more persons become a ballot question committee by making a contribution through the additional step of forming a corporation whose "real purpose" is to function as a "corporate shell" for the "sole purpose" of making anonymous contributions to a ballot question committee as alleged by the Secretary.  Complaint, ¶¶7, 17-18.  Because this case only involves alleged collaborators who take that additional step, we need not reach Defendants' hypotheticals.

[¶10.]       Second, Defendants' argument incorrectly assumes that because the statute could be absurdly construed to apply to others, it may not be construed to apply to them.  Concededly, there are other factual scenarios that could trigger absurd results.  Those other factual scenarios do not, however, relieve these

Defendants of responsibility for their conduct. Citing Justice Holmes, we have previously recognized that criminal statutes may not be construed under some artificial rule creating an inference that because a statute's penalty cannot lawfully be applied to others, it may not be applied to those who are prosecuted. *State v. Hy-Vee Food Stores, Inc.*, 533 NW2d 147, 150 (SD 1995) (citing *United States v. Union Supply Co.*, 215 US 50, 30 SCt 15, 54 LEd 87 (1909)). Therefore, even if the criminal disclosure statutes at issue today may not be construed to apply to every husband, wife, and friend who collaborate, agree, and contribute to a ballot question committee, the statutes may be construed to apply to these Defendants' conduct. Defendants' statutory construction argument is without merit.

[¶11.] The pivotal statute in this case is SDCL 12-25-1(1A), which defines a ballot question committee as "any two or more people who cooperate for the purpose of raising, collecting or disbursing money for the adoption or defeat of any question submitted to the voters at any election[.]"[4] The elements of the statute relevant to the issue before this Court are: "two or more people;" "cooperate;" and "raising, collecting or disbursing money." The circuit court focused its analysis on the last of

---

4. This case is decided under the 2006 version of this law, as the Legislature repealed SDCL 12-25-1 to 12-25-26, inclusive, in 2007. A ballot question committee is now defined in SDCL 12-27-1(2) as:
   > [A] person or organization that raises, collects, or disburses contributions for the placement of a ballot question on the ballot or the adoption or defeat of any ballot question. A ballot question committee is not a person, political committee, or political party that makes a contribution to a ballot question committee. A ballot question committee is not an organization that makes a contribution to a ballot question committee from treasury funds[.]

these elements. In demonstrating that all of these statutory elements are capable of being met, however, each is discussed in turn. We caution that the following analysis is not intended as factual findings in favor of the Secretary, but rather to demonstrate that the Complaint states a cause of action for disclosure under the relevant statutes.

[¶12.] The first pertinent element is "two or more people." Defendants claim that this element is not met because "the contributions came from one source" and "a corporation and its participants are one person."[5] Brief for Appellee at 9, 10. Defendants' argument is misplaced. This is not a complicated analysis. "People" is not defined in the South Dakota code, but "person" is defined in SDCL 2-14-2(18) to include "natural persons, partnerships, associations, cooperative corporations, limited liability companies, and corporations[.]" Under the facts of this case, we must consider both pre- and post-incorporation actors and their actions. Here, it is plausible that three persons were involved: initially, Hunt and the unnamed third party; later, Hunt, the unnamed third party, and the corporation they formed, PFI. Hunt, the unnamed third party, and/or PFI may qualify as persons under the statute.

---

5. Defendants cite *Fritzmeier v. Krause Gentle Corp.*, 2003 SD 112, ¶37, 669 NW2d 699, 707, as support for this position. *Fritzmeier* involved fraudulent misrepresentations of a restaurant franchise. This Court considered whether corporate damages could be sustained by shareholders who brought claims in their individual capacities. We do not find that analysis applicable here.

   Defendants also cite *Meyer v. Holley*, 537 US 280, 123 SCt 824, 154 LEd2d 753 (2003), a vicarious liability case involving alleged racial discrimination. The applicability of that case to these facts is too attenuated to be instructive here.

[¶13.]    The second element is that the two or more people "cooperated." "Cooperation" is defined as "[a]n association of individuals who join together for a common benefit." BLACK'S LAW DICTIONARY 359 (8thed 2004). Here, a finder of fact could find that Hunt, the unnamed third party, and/or PFI "join[ed] together for [the] common benefit" of giving $750,000 to VoteYesforLife. Therefore, the second element may be met.

[¶14.]    The last, and perhaps most important, element of SDCL 12-25-1(1A) at issue here is whether the relevant conduct involved "raising, collecting or disbursing money." The circuit court characterized the Defendants' acts as "contributing," and thereafter concluded that because "contributing" is not specifically stated in the statute, Defendants did not form a ballot question committee. The terms "contributing" and "raising, collecting or disbursing" are not mutually exclusive. A party may be found to have "contributed" money to a cause, while at the same time, the party may have "rais[ed], collect[ed] or disburs[ed] money" to the same cause. Moreover, because the language is stated in the disjunctive, the Secretary need only prove one of the acts. In this case, however, a finder of fact may determine that Hunt, the unnamed third party, and PFI performed any or all of these acts.

[¶15.]    "Raise" is defined, in part, as "[t]o gather or collect[.]" BLACK'S LAW DICTIONARY 1287 (8thed 2004). "Collect" is defined as "to bring together into one body or place." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 225 (10thed 1996). Lastly, "disburse" is defined as "paying out money[.]" BLACK'S LAW DICTIONARY 495 (8thed 2004) (defined under "disbursement"). It is within the fact finder's province to determine if the evidence supports a determination that

Defendants performed any of these acts. Therefore, even if the actions can be classified as "contributing," the actions may still fall under the purview of SDCL 12-25-1(1A).

[¶16.]        PFI was established to shield the unnamed third party from the mandates of SDCL 12-25-19.1 and 12-25-13.1. This is clear from Defendants' concession in the pleadings. Paragraph 18 of the Complaint sets forth: "[T]he real purpose of Defendant Corporation's creation was to provide a corporate shell by which the sole shareholder that directed Defendant Hunt to incorporate could make anonymous contributions to ballot question committees that supported the passage of Referred Law 6, such as VoteYesForLife." In paragraph 18 of the Defendants' Statement of Undisputed Material Facts, Defendants concede this was true solely for purposes of their motion for summary judgment. Had the unnamed third party given $750,000 directly to VoteYesforLife, he or she would have had to disclose his or her identity for summary judgment purposes. Hunt and the unnamed third party formed PFI to avoid this result. Therefore, because the unnamed third party would have otherwise been required to reveal his or her identity, the attempted manipulation of the statutes fails and summary judgment was improper.

[¶17.]        Lastly, Defendants claim that requiring the unnamed third party to identify him or herself raises constitutional questions. Because the circuit court did not address these issues below, we do not reach them on appeal.

[¶18.]        For summary judgment purposes, two or more people cooperated in raising, collecting or disbursing money. The fact that the money was later labeled a "contribution" is insignificant for statutory interpretation purposes. Summary

judgment was improperly granted.  The Secretary should have the opportunity to prove his case in a trial before a finder of fact, and thereby allow the finder of fact to determine whether a ballot question committee was formed.

[¶19.]     Accordingly, we reverse and remand for trial.

[¶20.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.